Brady, J.
The parties to this action entered into an agreeement on the 26th March, 1880, by which theatrical representations were to be given with the defendant, as the leading actor, the star as designated in the dramatic world. The plaintiff was to furnish a full and first-class company, with all necessary appointments, for the proper presentation of such plays, as should be mutually agreed upon. - He was also to furnish all moneys needed for the enterprise, and to be solely responsible for all the expenditures. It was further provided that the defendant was to receive as a compensation one-half of the net profits made by the enterprise, that is, all expenses, both ordinary and extraordinary, were to' be first paid and the residue divided, but out of the half of the defendant’s, a weekly payment of seventy-five dollars to be made him, was to be deducted. There were other provisions to which, for the purposes of the appeal, however, it is not necessary to refer. The agreement thus made was continued in writing for one year, from the 6th September 1883, upon the same conditions expressed, except that the defendant was to receive sixty per cent of the net profits,, and the plaintiff forty per cent, and the defendant’s wardrobe was to be paid for out of the current expenses of the company. The enterprise was continued however, beyond the year mentioned, and indeed until the 3d January, 1886, when the defendant was stricken with paralysis. During the period over which the relations of the parties continued, the plaintiff, from time to time, advanced moneys to the defendant. and the latter paid on account from time to time, and it seems that neither kept an account which naturally left the details very much in doubt, and made the settlements when they took place, more reliable, and decidedly so, than any other event or incident characterizing the accounts or their condition. It appeared upon the trial, that *202 the plaintiff held a note of the defendant’s for three thousand dollars, payable to the former one day after date, and dated April 21,1884, and which was allowed to him, and this, with other items, formed the total of his claim.
It also appeared that certain properties had been purchased for the enterprise, some of which the plaintiff had sold and others loaned for sums which had been paid him, and as to which there had been no accounting between the parties. There properties purchased and deducted out of the receipts were a part of the joint enterprise and of the profits of which the defendant was entitled to his share as joint tenant. This proposition was not entertained by the referee, but in this he was in error. The plaintiff here, it must be kept in view, was the aggressive party, and by the agreement charged with the details of the expenditures and finances generally, and should, when he pressed his claim, have been ready to show the state of the accounts with all the proper elements ready for presentation and consideration.
Beside that, the defendant swore positively that when the season of 1885 commenced, he owed the plaintiff $2,400; he knew it, he said, because the plaintiff told him so. And further,' that in October of that year the plaintiff gave him, as a balance then due, the sum of $1,600, to which the $2,400 had then been reduced by payments made. And further still, up to the time of his sickness, the amount of his indebtedness to the plaintiff was $870.95, a sum which he made it. And further, he said, “On settling up the books, after I was able to go out, we settled up, and I owed that amount.” There was no denial of those alleged settlements, which were in all probability made, and indeed, as contemplated by the agreement, were to be made weekly.
The plaintiff denies these statements of the defendant by saying: “It is not true, as testified by the defendant, that he was indebted for the sum of $2,400.” “It is not true, as testified by him, that in October, 1885, there was a balance of $1,600,” and in this mode only. Accepting the denials in the form made, then the defendant had acknowledged an indebtedness which did not exist. The plaintiff did not deny the statement of the defendant that he gave the amounts mentioned as sums due him, or that the settlements which the defendant says took place occurred. The form of the plaintiffs denial, therefore, in a case like this, wherein it appears that no accounts were properly kept and wherein the plaintiff distinctly admitted that he did not always keep an account of the money given him by the defendant, is valueless.”
The note, it must be borne in mind, was made in April, 1884, and was forgotten by the defendant, who depended *203 no doubt, upon the settlements and which embraced, it would seem all indebtedness, without reference to the form in which it appeared, knowing that he was a debtor of the plaintiff for loans made. It is not at all surprising that he should have forgotten it as a detail of the business matters between him and the plaintiff, although he asserts that he paid the amount it represents. The parties seem to have been like brothers in the business, neither of them conducting their financial relations with any strictness of detail, a feature which marked their dealings until the defendant’s recovery, and so far as the record expresses itself until the defendant made an engagement with another person, which started the plaintiff upon this controversy. It should also be borne in mind, that when the plaintiff was asked why he did not demand the money for the $3,000 note, he said, “No reason in particular. I fully expected he was going out with me in the following season, ” but this was not at all satisfactory, for nearly two years had passed after the note was given before the defendant was taken ill, and according to the uncontradicted evidence of the latter, there was paid him by the plaintiff for his profits in five and a half years between $70,000 and $75,000, some portion of which must have been received during the two years mentioned, and the opportunity given the plaintiff of securing payment of the note.
The settlements to which the defendant refers and which were not contradicted, do not seem to have embraced any of his rights or interests in the properties accumulated during the enterprise, but appear to relate only to the financial dealings between him and the plaintiff, of payments and of loans and payments of them. The evidence should for these reasons have been held to establish the indebtedness of the defendant for loans and advances to be $870.95, the sum stated as the result of a settlement after his illness, subject to addition, if any other element existed creating a further liability. The items of the plaintiff’s demand embraced expenses of which the defendant was charged a percentage, including scenery for Othello, and which were allowed, but against which the interest of the defendant in the property purchased was not allowed.
The referee, as already suggested, held that it was purchased by the plaintiff and was necessary for carrying on his business and “in no part the property of the defendant.” This conclusion refutes itself. The business was not that of the plaintiff alone but of the defendant as well, who was entitled to his share of the profits which the monies of the enterprise represented, no matter in what form they existed. There are also items of expenditure not embracing purchases of value, a share of which is charged to the *204 defendant, a circumstance fortifying the proposition that it was not the business of the plaintiff alone in any sense but that of the defendant as well. It may be said also in regard to these expenses that, by the agreement between the parties, the plaintiff was to be solely responsible for them and secured as to them under its terms only the right to deduct them prior to dividing the profits. There is no suggestion in that instrument that, the defendant was to pay them or any part of them. He took the risk of receiving little or nothing for his services which were to be paid for in profits, and was protected from personal responsibility for expenses in anticipation óf gains which it was expected would more than cover them. This seems to be the spirit, form and substance of the engagement. It is beyond controversy that if the defendant was to pay any part of the expenses he was entitled to any property in hand representing them, but if not, then the items allowed were improperly imposed upon him. For these reasons it is thought there was a mis-trial and that the judgment should be reversed as against the weight of evidence. There seems to be little doubt as the record now stands that if the defendant’s counterclaim springing from his rights in the joint property purchased and to which reference has been made, had been allowed, the sum of his indebtedness determined by the settlement which took place after his sickness would have been met. On another trial the transactions may be better and more fully developed and thus presented in a more satisfactory manner for adjustment.
New trial ordered, with costs to the appellant to abide the event.
Van Brunt, P. J., and Daniels, J., concur.